# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 29, 2023

Lyle W. Cayce
Clerk

No. 22-30378

In the Matter of Hendrikus Ton,

*Debtor*,

Lynda Ronquillo Ton,

*Appellant*,

*versus*

Hendrikus Ton,

*Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1029

Before Wiener, Stewart, and Engelhardt, *Circuit Judges*.

Per Curiam:*

This appeal arises from Lynda Ton's ("Lynda") challenge to the district court's order affirming the bankruptcy court's partition judgment.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30378

Because the district court properly determined that Lynda did not establish that the bankruptcy court erred in assessing administrative expenses against her portion of the former community property, we AFFIRM.

## I.  BACKGROUND

Hendrikus Ton ("Hank") and Lynda were married in 1987. *In re Ton*, No. 21-514, 2022 WL 832572, at *1 (E.D. La. March 21, 2022).  During the marriage, the Tons owned and operated several businesses, including Abe's Boat Rentals Inc. ("Abe's"). *Id.*

On October 5, 2012, Hank pleaded guilty to conspiracy to defraud the United States by failing to file employment taxes in violation of 18 U.S.C. § 371 and 25 U.S.C. § 7202. *Id.* at 2.  Hank admitted that he underreported withheld taxes for Abe's employees between the years 2006 and 2009 and agreed to repay the amount of $3,582,451 in restitution to the IRS (the "tax liability" or "liability"). *Id.*

Lynda then filed for divorce in Louisiana on November 14, 2012 and received a judgment which terminated the community property regime retroactive to the date of that filing. *Id.*  On November 21, 2013, a year and a week later, Lynda filed a petition to partition community property in state court, but a trial was never held.

On May 29, 2013, Hank refinanced an existing line of credit to satisfy the tax liability. *Id.* He personally guaranteed a $3,222,451 loan and used the proceeds to pay the restitution owed to the IRS. He also liquidated a community life insurance policy and invested the proceeds in Abe's to cover its operating costs. He then refinanced his debt through a total of five loans to Abe's from Whitney bank between August 2011 and January 2015. *Id.* at 2–3.

In 2018, Hank filed a voluntary bankruptcy petition under Chapter 11 in the Eastern District of Louisiana. *Id.* at 2. The bankruptcy court ordered

2

No. 22-30378

a reorganization plan which incorporated Hank's personal assets and assets of the marriage's community property to satisfy the debt, including the series of loans he took out in connection with his tax liability. Several months later, Lynda removed the community property partition petition to the bankruptcy court. *Id.*

On August 14, 2019, the bankruptcy court entered an order partitioning the Tons' former community property. *Id.* The Tons each appealed that ruling, and the district court for the Eastern District of Louisiana vacated and remanded, holding that the bankruptcy court had erred in several respects in its partition. *Id.* at 3.

By early 2021, a confirmation hearing was held in the bankruptcy court during which Hank presented evidence that the proposed plan of reorganization ("the Plan") satisfied the requirements for a nonconsensual Chapter 11 "cramdown" under 11 U.S.C. § 1129.[1] *Id.* On February 21, 2021, the bankruptcy court entered an order (the "Confirmation Order") confirming the Plan. *Id.* Lynda appealed the Confirmation Order to the district court which determined that her arguments lacked merit and affirmed the Order. *Id.*

On May 12, 2021, the bankruptcy court entered a final judgment partitioning the Tons' community property, taking into consideration the bankruptcy court's Original Partition Judgment, the district court's holding on appeal, and the bankruptcy court's holding on remand. Lynda then appealed the bankruptcy court's judgment to the district court. The district

---

[1] The "cramdown" provision in 11 U.S.C. § 1129(b) requires valuation of collateral in the context of plan confirmation when the debtor retains possession of the collateral. "Under th[e] [cramdown] provision, a bankruptcy court may confirm a plan over a creditor's objection subject to certain conditions, so long as the plan 'does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.'" *Matter of Hous. Reg. Sports Net., L.P.*, 886 F.3d 523, 528 (5th Cir. 2018) (quoting 11 U.S.C. § 1129(b)).

court determined that Lynda did not meet her burden to establish that the bankruptcy court erred. This appeal followed.

## II.    STANDARD OF REVIEW

"We review the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Goodrich Petroleum Corp.*, 894 F.3d 192, 196 (5th Cir. 2018), *as revised* (June 29, 2018) (quoting *In re Entringer Bakeries, Inc.*, 548 F.3d 344, 348 (5th Cir. 2008) (internal quotation marks omitted)). "Thus, we review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo." *Id.* (citing *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003)).

## III.    DISCUSSION

On appeal, Lynda makes the following three arguments: 1. the bankruptcy and district courts erred in holding that creditor claim No. 8 was based on loans that were not a community obligation at the time they were incurred; 2. the bankruptcy and district courts erred in holding that she lost her vested economic interest in certain property deemed part of the bankruptcy estate; and 3. the bankruptcy and district courts erred in not treating Parcel No. 900648-C as community property. We address each argument in turn.

### A. *Community Obligation*

Lynda argues that she should not be forced to forfeit her undivided one-half of the former community to satisfy Whitney Bank's creditor claim—which consisted of assets valued at $7,692,303 at the time of the community's termination—because the valuation was based on 2014 and 2015 loans made to Abe's after the community had terminated on the Tons' divorce in 2012. She avers that she did not file for bankruptcy, that she was

not responsible for the debt, and that the debt was incurred by her ex-husband six years after the divorce in 2012. She asserts that she did not guarantee Abe's debts and had opposed the loans being made. She provides an analysis on each of the five loans dating back to the first, which was originally guaranteed by Hank on August 16, 2011. She further asserts that each subsequent loan paid off the former loan in full until the January 5, 2015 loan (the "January loan"). $412,072.77 of the January loan was used to pay off the remaining balance of Loan 4. $2,010,082.17 of the January loan was used to pay off the remaining balance of Loan 1. And $3,682,855.85 of the January loan was used to purchase a vessel for Abe's operations.

Before considering her arguments, we must first determine what is community property in this case. Community property is any property acquired during the existence of the legal regime, i.e., the marriage, through the effort, skill, or industry of either spouse. LA. CIV. CODE ANN. art. 2338 (2023). We have explained that "community property," as used to define property of the bankruptcy estate in § 541(a)(2), includes community property and former community property that has not been partitioned as of the petition date. *See In re Robertson,* 203 F.3d 855, 861 (5th Cir. 2000). Community property does not include former community property which has been divided and reclassified as separate property by state law before the petition date. *Id.* at 861. The legal regime of community property is terminated by a judgment of divorce. art. 2356 (2023). After the termination of the community property, La. Civ. Code. Ann. arts. 2369.2–2369.8 (2023) apply until a partition of the former community property is finalized.

In *Robertson,* we explained that "[a]n obligation incurred by a spouse before or during the community property regime may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation." 203 F.3d at 861. This means that a creditor's claim under state law is not affected

by the partition. *Id.* Further, the Bankruptcy Code article that controls community property, 11 U.S.C. § 541(a)(2), states that "[a]ll interests of the debtor and the debtor's spouse in community property" become part of the bankruptcy estate, including property that is under "equal, or joint management and control of the debtor."

Lynda filed for divorce in November 2012, roughly a month *after* Hank pleaded guilty to tax fraud and agreed to repay the tax liability in the amount of $3,582,451. Thus, at the time the tax liability was imposed, the Tons were still married, so the tax liability became a liability of the community. Further, the tax fraud was connected to Abe's, a business jointly owned and operated by the Tons during their marriage. When Abe's filed for Chapter 11 bankruptcy relief in 2018, that case was converted to Chapter 7. With the conversion of its bankruptcy case, Abe's ceased operations and was liquidated by a bankruptcy Trustee. The Trustee sold Abe's assets, but the bankruptcy court determined that the obligation was not satisfied and resorted to a reorganization plan to satisfy Hank's debt, which included Lynda's assets and vested economic interests.

In *Robertson,* we explained that obligations incurred by the spouses during the marriage are community obligations unless and until the challenging party demonstrates either that such an obligation was not incurred for the common interest of the spouses or that the interest of one spouse did not benefit the other spouse. *In re Robertson*, 203 F.3d at 861. Because Lynda did not rebut this presumption or show that the bankruptcy court otherwise erred in calculating the community obligations, the district court correctly held that the additional loans taken out after the divorce—pertinent here, the 2013 and 2015 loans—were "merely refinanced community obligations, such as the [t]ax [l]iability[.]" *In re Ton,* No. 21-1029, 2022 WL 1642042, at *3 (E.D. La. May 24, 2022). We hold that the district court properly affirmed the bankruptcy court's determination.

### B. *Economic Interest in Co-owned Former Community Property*

Lynda also argues that the bankruptcy and district courts erred in holding that she, as the non-filing spouse, lost her vested economic interest in the co-owned former community property as a result of Hank's filing for bankruptcy in 2018. She contends that, under Louisiana law, former spouses become co-owners of the former community property and that her portion of the co-owned former community may only be assessed for liability that incurred prior to its termination. The district court reasoned that the bankruptcy code preempts state law when the two conflict. Consequently, "a bankruptcy estate acquires both spouses' interests in the community property and is therefore the sole owner (even where one spouse does not file bankruptcy)." *In re Ton*, No. 21-1029, 2022 WL 1642042, at *3 (E.D. La. May 24, 2022) (quoting *In re Wiggains*, 535 B.R. 700, 719–20 (Bankr. N.D. Tex. 2015), *aff'd sub nom. Matter of Wiggains*, 848 F.3d 655 (5th Cir. 2017)). We agree, and—since we have already determined that Lynda's property interest was properly incorporated into the bankruptcy estate because the liability was incurred not only *before* the partitioning of the former community property, but also *before* she filed for divorce—it is unnecessary to further examine the bankruptcy court's economic–interest calculations. For these reasons, we hold that the district court did not err when it affirmed the bankruptcy court's order. *See Goodrich Petroleum Corp.*, 894 F.3d at 196.

### C. *Parcel No. 900648-C*

Lastly, Lynda contends that the plan did not treat Parcel No. 900648-C as community property for the purposes of satisfying the liability. However, the district court determined that the record established that the partition judgment incorporated the $320,000 value of Parcel No. 900648-C. Lynda never challenged the bankruptcy court's valuations during her

No. 22-30378

appeal of the original partition, so she has failed to establish clear error in the bankruptcy court's calculations. *See Gerhardt*, 348 F.3d at 91.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM.